UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GLOBAL SIGNAL ACQUISITIONS II
LLC, as attorney-in-fact for
STC FIVE LLC,
        Plaintiff,
  v.                                                    Case No. 19-cv-1600

ROBERT D. STEWART,
        Defendant.

## ORDER

Plaintiff has sued its landlord for breach of contract, conversion, interference with an interest in real property, and tortious interference with its contracts with third parties. Defendant has moved to dismiss. For the reasons that follow, I DENY the motion.

## I. BACKGROUND

In 1999, Defendant's father ("Stewart Senior") entered into an agreement with Sprint to place a cellular tower on part of Stewart Senior's property ("Cell Site") with rights of access and a utility easement in exchange for monthly rent. *See* Compl. Exs. A & B. If Sprint leased space on the tower to "Non-Affiliate tenants other than those designated by Owner," Sprint would pay $150 extra in rent for each such tenant. Ex. A, Addendum ¶ 1. " 'Non-Affiliate' means any party other than (i) any party controlling, controlled by, or under common control with [Sprint] or (ii) any affiliated party acquiring substantially all of the assets of [Sprint.]" *Id.*[1]

---

[1] For example, in August 2004, Sprint and Stewart Senior executed an amendment pursuant to the Non-Affiliate provision, under which Sprint agreed to pay the additional $150 per month upon entering into a collocation agreement with U.S. Cellular. *See* Ex. C.

In May 2005, Sprint entered into an agreement with STC FIVE LLC ("STC FIVE") and Global Signal Acquisitions ("GSA") whereby Sprint transferred its interest to STC FIVE, STC FIVE then subleased the Cell Site to GSA, and GSA leased back to Sprint space on the Cell Site. *See* Ex. D, ¶¶ 2-3, 7.[2] In June 2005, Stewart Senior and Sprint executed an agreement ("2005 Amendment") by which Stewart Senior consented[3] to the Sprint-STC FIVE-GSA arrangement and the parties agreed that Sprint was the "current tenant under the Lease," no default existed on Sprint's part, and no payments were owed to Stewart Senior with respect to the Sprint-STC FIVE-GSA transaction. *See* Ex. E, ¶¶ 1-2. *See also* Ex. E, ¶ 6(a) ("This Agreement shall be binding upon Landlord and its successors…"). In April 2011, Stewart Senior and STC FIVE executed another amendment ("2011 Amendment") whereby the parties agreed that STC FIVE was the current tenant under the Agreement and that no default existed on STC FIVE's part. Ex. F, ¶ 9(e)-(f). *See also* Ex. G, ¶¶ 2-3 (memorandum of agreement).

Stewart Senior died in November 2013 and Defendant acquired the property on which the Cell Site is located on or about January 12, 2016. Am. Compl., ¶¶ 58, 60. Defendant, claiming that Sprint was a Non-Affiliate of GSA, alleged default[4] for failure to pay the higher Non-Affiliate rent price and claimed to terminate the contract on June 2,

---

[2] Under Plaintiff's characterization of this arrangement, STC FIVE is the "Tenant" under the original agreement between Sprint and Stewart Senior, Am. Compl., ¶¶ 32, 40. GSA "manages" the Cell Site for STC FIVE as its "attorney-in-fact," discharging any obligations STC FIVE may have to Defendant, and has the rights to collect revenue generated from the Cell Site and to bring suit to enforce any of STC FIVE's rights under the original agreement. *Id.*, ¶¶ 37-39. Plaintiff also stresses that Sprint did not transfer any of its equipment on the site and retains its right to use its equipment on the site. *Id.*, ¶¶ 31, 35-36, 41. STC FIVE is a subsidiary within the greater Sprint corporate family, while GSA is a separate, unrelated entity. *Id.*, ¶¶ 4, 33, 50.

[3] The parties' original agreement allowed Sprint the right to assign or transfer the agreement without Stewart Senior's consent. Ex. A, ¶ 5.

[4] Under the parties' agreement, a party in monetary default has ten days to cure the default following receipt of notice, after which the non-defaulting party may pursue any available remedies, including the right to terminate the agreement. Ex. A, ¶ 12.

2016. *Id.*, ¶¶ 65, 69. Plaintiff's first amended complaint brings claims for (1) breach of contract, (2) conversion, (3) interference under Wis. Stat. § 644.01, and (4) tortious interference with a contract. *Id.*, ¶¶ 91-128. Plaintiff seeks a declaratory judgment, specific performance, and damages in excess of $1 million. *Id.*, ¶¶ 6, 129-48.

## II.  STANDARD OF REVIEW

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In construing a plaintiff's complaint, I assume that all factual allegations are true but disregard statements that are conclusory. *Iqbal*, 556 U.S. at 678. In ruling on a Rule 12(b)(6) motion, I also draw all reasonable inferences in favor of the plaintiff. *Marshall–Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). I may consider attachments to the complaint in ruling on a motion to dismiss. *Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004).

## III.  DISCUSSION

Defendant's motion is based on his assertion that he lawfully terminated the parties' agreement because Sprint is not an affiliate of GSA, and GSA is thus obligated to pay the higher sub-tenant rental rate. According to Defendant, GSA's failure to pay this higher rate is an uncured default which gives Defendant the right to terminate the agreement under its terms, as he purported to do in 2016.

While a court's goal in interpreting a contract is to give effect to the parties' intentions, the language of the contract controls a court's interpretation. *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶ 34 (citations omitted).[5] When the terms of a contract are clear and unambiguous, a court is to construe the contract's language according to its literal meaning. *Id.*, ¶ 35 (citations omitted). Regardless of arguments that could be had as to the parties' 1999 agreement and/or 2005 Amendment, the 2011 Amendment signed by Stewart Senior and STC FIVE allows the reasonable inference that the Sprint-STC FIVE-GSA arrangement does not constitute a default because Stewart Senior expressly affirmed as much in exchange for six thousand dollars. *See* Ex. F, ¶¶ 7, 9(f). Specifically, the 2011 Amendment reads:

> (f) **No default exists under the Agreement on the part of Tenant**, and, to Owner's knowledge, no event or condition has occurred or exists which, with notice or the passage of time or both, would constitute a default by Tenant under the Agreement.

Ex. F, ¶ 9(f) (emphasis added). The memorandum to this amendment, also signed by both parties, reads likewise:

> 3. Owner and Tenant certify that the Amended Agreement is in full force and effect, and that *as of the date hereof, there are no current defaults or breaches under the Amended Agreement by Owner and/or Tenant*. Further, Owner and Tenant are not aware of any events which have occurred which, with the passage of time or service of notice, or both, would constitute a default under the Amended Agreement and that Owner and Tenant have full right to execute and deliver this instrument.

Ex. G, ¶ 3 (emphasis added). Defendant's theory in moving to dismiss relies on the fact that conditions for Plaintiff's default have been in place since 2005. But any such default appears to be negated by Stewart Senior's affirmation that, as of 2011, six years after

---

[5] *See* Ex. A, ¶ 19(b) ("This Agreement is governed by the laws of the State in which the Site is located.").

4

Case 2:19-cv-01600-LA   Filed 06/24/20   Page 4 of 6   Document 18

the Sprint-STC FIVE-GSA transaction, no default existed. And, at this early stage, Defendant has not shown any other reason to question the 2011 Amendment's terms or validity.[6] The amended complaint thus allows the reasonable inference that any ambiguity as to Plaintiff's supposed default were resolved with Stewart Senior's consent, and that Defendant may therefore liable for breaching the contract.

Finally, I also note that, regardless of the terms expressed in the parties' agreements and amendments, the apparently amicable state of the parties' relationship from 2005 to 2016 also weighs against dismissal. When contractual language is not clear and unambiguous, a court will ordinarily give great weight to the interpretation of terms which the parties have adopted in the course of their dealings. *Martinson v. Brooks Equip. Leasing, Inc.*, 152 N.W.2d 849, 854 (Wis. 1967) (citing *Cutler-Hammer, Inc. v. Industrial Comm.*, 109 N.W.2d 468, 475 (Wis. 1961)). *See also Zweck v. D. P. Way Corp.*, 70 Wis.2d 426, 435 (Wis. 1975) ("evidence of practical construction by the parties is highly probative of the intended meaning of [disputed] terms"). The passage of eleven years with no disruption in the parties' relationship allows the reasonable inference that there was no breach or cause for default on Plaintiff's part, even if any contractual language is found to be ambiguous. Dismissal at pleading is not warranted.

---

[6] Defendant also argues that the 2005 and 2011 Amendments do not constitute adequate waivers of any contractual rights by Stewart Senior, however these arguments are raised for the first time in reply. Regardless, there is no indication at this stage that any waiver by Stewart Senior was defective.

5

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that Defendant's motion to dismiss (ECF No. 13) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 24th day of June, 2020.

                                         s/Lynn Adelman
                                         LYNN ADELMAN
                                         District Judge

6

Case 2:19-cv-01600-LA   Filed 06/24/20   Page 6 of 6   Document 18